## UNTIED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LAWRENCE EDWARD BUCKNER,

        Plaintiff,

v.                                                             CASE NO. 2:15-cv-10441

                                           HON. MARIANNE O. BATTANI

JAMES MICHAEL ROY, et al.,

        Defendant.

_____/


## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS


## I.     INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss. (Dkt. 14.) Plaintiff Lawrence Buckner has asserted the following federal claims arising under 42 U.S.C. § 1983: violation of Fourth, Eighth, and Fourteenth Amendment rights against the individual officers (Count I), as well as supervisor/municipal liability against County of Washtenaw and Sheriff Jerry L. Clayton for failure to enforce or train in proper procedure (Count II). (Dkt. 6.) Plaintiff, however, has stipulated to dismiss his Eighth Amendment claims. (Doc. 16.) Additionally, the complaint asserts the following claims arising under state law: negligence on the parts of Deputy James Roy and the Charter Township of Ypsilanti (Count III); negligent entrustment of a motor vehicle on the part of the Charter Township of Ypsilanti (Count IV); statutory owner's liability against the Charter Township of Ypsilanti (Count V); gross negligence on the part of all Defendants (Count VI); assault and battery as to all Defendants (Count VII); and intentional infliction of emotional distress as to all Defendants (Count VIII). Defendants argue that the

officers acted reasonably and in good faith and are entitled to qualified and governmental immunity. (Dkt. 14.) For the reasons stated on the record at hearing, the individual officers, other than Deputy Roy, are hereby dismissed without prejudice. Further, based on the parties' briefs, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.

## II.   STATEMENT OF FACTS

The following facts are as alleged by Plaintiff, which the Court adopts for the purposes of the Defendants' Motion to Dismiss. On or about April 4, 2013, Plaintiff was the subject of a sting operation in which an undercover officer sold Plaintiff a handgun which had been rendered inoperable. As Plaintiff left the motel after the transaction, he was confronted by the plain clothed officers with their guns drawn. Plaintiff did not know that these men were officers and began to run in fear for his life. The officers gave chase, with one officer a few steps behind him about to tackle him (this officer is unidentified). At this point, Defendant Deputy Roy drove his police vehicle, owned by Defendant Charter Township of Ypsilanti, at a high rate of speed and directly struck Plaintiff. Plaintiff suffered serious injuries that have left him in pain and unable to ambulate without the assistance of a wheelchair or walker. (Compl. ¶ 22A-H).

## III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) will fail if the complaint survives the heightened pleading standards set forth by the Supreme Court. Fed. R. Civ. P. 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint, when taken as true, must allege more than

"labels and conclusions, and a formulaic recitation of the elements of a cause of action .

. . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Ashcroft v. Iqbal held that a

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting Twombly, 550

U.S. at 556). The complaint must plead facts that allow a reasonable inference that the

defendant is liable. Id.

## IV. DISCUSSION

### A. Mich. Comp. Laws § 600.6431

The Court must first address Defendants' preliminary argument, namely, that the

claims asserted against Defendants County of Washtenaw and Charter Township of

Ypsilanti are barred because of Plaintiff's noncompliance with the statutory notice

requirement set forth by Mich. Comp. Laws § 600.6431. (See Doc. 20.) This statutory

provision states:

> No claim may be maintained against the state unless the claimant, within
> 1 year after such claim has accrued, files in the office of the clerk of the
> court of claims either a written claim or a written notice of intention to file a
> claim against the state or any of its departments, commissions, boards,
> institutions, arms or agencies . . . .

Mich. Comp. Laws § 600.6431. Plaintiff contends that the notice requirement applies

only to suits brought against the state or its agencies and, consequently, not to the

present claims because neither the County of Washtenaw nor the Charter Township of

Ypsilanti are state actors.

Section 600.6431 does not provide a definition of "the state or any of its

departments, commissions . . . ," nor does case law offer any clarification. However, a

related statute conferring on the Michigan Court of Claims exclusive jurisdiction over

3

claims brought against "the state or any of its departments or officers" provides a definition of that phrase.  See Mich. Comp. Laws § 600.6419.  Specifically, the statute provides:

> "[T]he state or any of its departments or officers" means this state or any state governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of the state, or an officer, employee, or volunteer of this state or any governing, legislative, or judicial body, department, commission, board, institution, arm, or agency of this state, acting, or who reasonably believes that he or she is acting, within the scope of his or her authority while engaged in or discharging a government function in the course of his or her duties.

Mich. Comp. Laws § 600.6419(7).  The Michigan Supreme Court has developed the following guidance for determining whether an entity is a state agency under Mich. Comp. Laws § 600.6419: (1) whether the entity was created by the state constitution, a state statute, or state agency action; (2) whether and to what extent the state government funds the entity; (3) whether and to what extent a state agency or official controls the actions of the entity at issue; and (4) whether and to what extent the entity serves local purposes or state purposes. This inquiry emphasizes an examination of the "totality of the circumstances" to determine "the core nature of an entity."  Manuel v. Gill, 481 Mich. 637, 653 (2008).

Applying this standard to the present case results in the common-sense conclusion that neither the County of Washtenaw nor the Charter Township of Ypsilanti are state actors.  These local entities are not traditional state departments, agencies, or commissions such as the Department of Corrections, Department of State, or Attorney General; indeed, they were not created by state statute or constitution, are not subject to state control, and serve local purposes.  Defendants' reliance on Fairley v. Dept. of Corrections, No. 149722, 2015 Mich. LEXIS 1395 (Mich. June 5, 2015) and Johnson v.

4

Operation Get Down, Inc., No. 11-15487, 2013 U.S. Dist. LEXIS 111533 (E.D. Mich.

Aug. 8, 2013), is unavailing.  Fairley clearly concerned a suit against a state actor, the

Michigan Department of Corrections, while Johnson involved a suit against a state

contractor operating a diversion program.  See Johnson, 2014 U.S. Dist. LEXIS 104147

at *3 (E.D. Mich. June 30, 2014).  Accordingly, Plaintiff was not obligated to file notice of

his intent to file the present suit with the Court of Claims.

### B.  Section 1983 Deprivation (Count I)

Because the individual officers, other than Deputy Roy, have been dismissed,

Count I now proceeds only against Roy.  Plaintiff alleges that Deputy Roy violated 42

U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State . . . subjects, or causes to be subjected,
> any citizen of the United States . . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law . . . .

Plaintiff's claim against Deputy Roy is based on an alleged violation of his Fourth

Amendment right to be free from unreasonable seizure.  Plaintiff claims that Deputy

Roy, acting under color of law, used excessive force when he hit Plaintiff with the police

vehicle in order to apprehend him.

Regarding Plaintiff's Fourteenth Amendment claim, Count I is more appropriately

analyzed under the Fourth Amendment because it deals explicitly with intrusive

governmental conduct, rather than an analysis under the Fourteenth Amendment's

substantive due process rights.  Graham v. Connor, 490 U.S. 386, 394-395 (1989).

"Where . . . the excessive force claim arises in the context of an arrest or investigatory

stop of a free citizen, it is most properly characterized as one invoking the protections of

the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Id. at 394. Therefore, this Court hereby dismisses Plaintiff's Fourteenth Amendment claim.

A claim for deprivation of rights guaranteed by the Constitution involves a two-part analysis looking first at whether there has been a violation of a constitutional right, and if so, whether the officer is personally liable for that violation. Binay v. Bettendorf, 601 F.3d 640, 647-50 (6th Cir. 2010). To show violation of a constitutional right, Plaintiff must first show that the use of a vehicle against him was excessive force. The Fourth Amendment standard for determining excessive force is one of objective reasonableness. Determining whether the force used was objectively reasonable requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. Id. (citing Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Factors to consider in determining the reasonableness of the conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

After determining that there is a constitutional violation, the Court must then analyze whether Deputy Roy was personally involved in the violation. Binay, 601 F.3d at 650. "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the

officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'" Id. (quoting Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997)).

Deputy Roy raises the defense of qualified immunity available to government officials performing discretionary functions that have not violated a clearly established right. Rich v. Mayfield Heights, 955 F.2d 1092, 1094 (6th Cir. 1992). Although the ultimate burden of proof is on Plaintiff, to be protected by qualified immunity Deputy Roy must "com[e] forward with facts to suggest that [he was] acting within the scope of [his] discretionary authority during the incident in question." Id. at 1095 (citing Wegner v. Covington, 933 F.2d 390, 392 (6th Cir. 1991)). According to the Supreme Court's decision in Saucier v. Katz, after Deputy Roy shows he was performing a discretionary function, the Court must then determine whether he violated a clearly established right. 533 U.S. 194, 201 (2001). A clearly established right is violated if the "plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in the light of the clearly established constitutional precedent." Floyd v. City of Detroit, 581 F.3d 398, 405 (6th Cir. 2008).

Plaintiff alleges that his Fourth Amendment rights were violated by Deputy Roy's use of excessive force against him. To show that the amount of force used was objectively reasonable, Deputy Roy analogizes Plaintiff's case with Smith v. Freland, in which a police officer shot and killed a suspect involved in a high-speed chase after the suspect rammed a police cruiser with his vehicle. 954 F.2d 343, 344 (6th Cir. 1992). In Smith, the court determined that the officer's use of deadly force was objectively reasonable given that the officer acted on the scene in a rapidly progressing and

7

uncertain situation. Id. at 346-47.  The facts alleged in the present case do not indicate circumstances as volatile as those at issue in Smith; here, the situation had not been ongoing for an extended period, nor was Plaintiff driving a vehicle.  Deputy Roy also analogizes Lopez v. Gordon, in which the suspect was fleeing by way of various vehicles and on foot.  No. 08-0820 WDS/RLP, 2009 U.S. Dist. LEXIS 133607 at *2-3 (D.N.M. Dec. 23, 2009).  The suspect was finally captured when an officer accidently struck the pedestrian suspect with his vehicle.  Id.  The Smith and Lopez courts each held that the use of force was reasonable because the officers could have reasonably believed the suspects to be armed and capable of doing harm to more people if they were allowed to escape.  954 F.2d at 347; 2009 U.S. Dist. LEXIS 133607 at *9.  These facts contrast with the case at hand in that Plaintiff had only just begun fleeing on foot, without a working firearm, and had not assaulted or threatened anyone along the way.

Plaintiff relies on Garner, which held that a police officer cannot use deadly force against a fleeing suspect unless the suspect is reasonably believed to pose a significant physical danger to the officers or others in the community.  471 U.S. at 11.  Plaintiff relies on this case for the notion that a "physical danger" includes threatening the officer with a weapon or committing a crime involving infliction of serious bodily harm.  (Pl.'s Br. at 5).  In Garner, an officer shot and killed a fleeing suspect, believing the suspect to be unarmed, to prevent escape.  471 U.S. at 3-4.  The Supreme Court held that where a suspect does not pose an immediate threat to the officer or others, it is unreasonable to use deadly force against the suspect.  Id. at 11.  This is similar to Plaintiff's case. Plaintiff was not known to be in possession of a functional gun and apparently posed no

immediate threat of harm.  Therefore, Deputy Roy's use of the vehicle was excessive, with the potential of becoming deadly force.  (Pl.'s Br. at 4).

Taken as a whole, the factors set forth by Graham support Plaintiff's position. The crime at issue (purchasing a handgun rendered inoperable by the police) is an inherently severe crime.  However, it is not clear from Plaintiff's Complaint that he posed a severe threat to the officers or others, as Plaintiff alleges that he never brandished a gun nor made any verbal or physical threats.  Finally, Plaintiff alleges that while he was fleeing arrest, an officer on foot was very close to tackling and stopping him.  Because the other officers were allegedly so close to tackling Plaintiff, and Plaintiff had not brandished a weapon, it was objectively unreasonable for Deputy Roy to strike Plaintiff with a vehicle to stop him.

Furthermore, Deputy Roy is not protected by qualified immunity.  He is performing a discretionary function while in pursuit of Plaintiff.  However, for the reasons articulated above, Deputy Roy did violate a clearly established right when he took action that was objectively unreasonable and constituted excessive force.  See Saucier, 533 U.S. at 201; Rich, 955 F.2d at 1094.  Therefore, this Court hereby denies dismissal of Count I from Plaintiff's Complaint against Deputy Roy.

### C.  Municipal/ Supervisory Liability under 42 U.S.C. § 1983 (Count II)

Plaintiff claims that Defendants County of Washtenaw and Sheriff Clayton are liable for the deprivation of his Fourth and Fourteenth Amendment rights due to alleged failure to adequately train the officers involved, which created an unconstitutional policy or practice allowing officers to use a vehicle to stop a fleeing suspect.  (Compl. at ¶¶ 8, 11, 12, 20, 34-41).

9

According to the Sixth Circuit, the County of Washtenaw will be liable under 42 U.S.C. § 1983 if Plaintiff can prove "that [its] training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Inadequacy of police training may be a basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Harris, 489 U.S. at 388.  Failure to provide proper training can be considered a "policy" when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

In this matter, one cannot tell from a reading of the Complaint whether the County of Washtenaw and Sheriff Clayton were deliberately indifferent or consciously disregarded a need for more or different training.  Showing that the plaintiff suffered a violation of a constitutional right will not alone be sufficient to show municipal liability. Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 406-07 (1997).  The Complaint is also deficient in showing that the alleged unconstitutional policy (failure to properly train the officers) was the direct cause of Plaintiff's injuries. Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997).  However, when civil rights are involved, a decision to dismiss the case should be made with care. Cheriee Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994).  At this point in the case, it would be difficult for Plaintiff to have enough information about the training program implemented by County of Washtenaw

10

and promulgated by Sheriff Clayton without an opportunity for adequate discovery.  This perhaps explains why Plaintiff has not pled sufficient factual allegations to answer the first element of municipal liability, but this does not necessarily mean that his claim should fail at this early stage.  See Petty v. County of Franklin, 478 F.3d 341, 348 (6th Cir. 2007) (reversing dismissal of municipality because of the need for discovery to fully allege a claim of liability).  Accordingly, Plaintiff should be permitted an opportunity to conduct discovery prior to dismissal of his claim.

Additionally, this Court must determine whether Sheriff Clayton should be dismissed from Count II.  Plaintiff asserts claims against Sheriff Clayton in both his personal and official capacities.  A supervisory official is not liable in his personal capacity unless it can be shown that he "encouraged the specific incident of misconduct or in some other way directly participated in it," or, at a minimum, "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Bellamy v. Bradley, 729 F.3d 416, 421 (6th Cir. 1984).  Although Plaintiff has not pleaded that Sheriff Clayton directly participated in the alleged misconduct, he has pleaded that Sheriff Clayton acquiesced in or encouraged the misconduct through his failure to supervise and train the deputies.  In spite of the complaint's lack of factual development supporting the claim that Sheriff Clayton acquiesced to or encouraged the misconduct, it would be difficult for Plaintiff to have knowledge of this information prior to discovery.  Therefore, Plaintiff should have an opportunity to conduct discovery regarding Sheriff Clayton's individual liability.

Regarding the claim against Sheriff Clayton in his official capacity as sheriff, suits against individuals in their official capacities have been recognized as simply another

11

means of asserting claims against entities of which those individuals are agents. Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Consequently, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Id. at 166.  Relying on the Supreme Court's ruling, the Sixth Circuit has upheld dismissal of official-capacity actions against individuals where those claims overlap with those stated against the governmental entity.  See, e.g., Foster v. Michigan, 573 F. App'x 377, (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."); Petty, 478 F.3d at 348-49 ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself.").  Accordingly, because the County of Washtenaw is also a party to Plaintiff's Count II claims, the claim against Sheriff Clayton in his official capacity is superfluous and may be dismissed without injuring Plaintiff's opportunity to sue the municipality.

Therefore, the Count II claim against Sheriff Clayton in his official capacity is dismissed; however, the Court denies dismissal of Count II against County of Washtenaw and Sheriff Clayton in his individual capacity.

### D.  Governmental Immunity from State Law Claims

Individual officers and employees of governmental agencies are entitled to immunity from *negligent* tort liability for actions taken in the course of employment unless:

12

(a)     the individual was acting or reasonably believed that he was acting
        within the scope of his authority,
(b)     the governmental agency was engaged in the exercise or discharge
        of a governmental function, and
(c)     the individual's conduct amounted to gross negligence that was the
        proximate cause of the injury or damage.

Odom v. Wayne County, 482 Mich. 459, 480 (2008).  See also Mich. Comp. Laws §

691.1407(2).  Individual defendants also enjoy governmental immunity from *intentional*

tort claims where:

(a) The acts were undertaken during the course of employment and the
    employee was acting, or reasonably believed that he was acting, within
    the scope of his authority,
(b) the acts were undertaken in good faith, or were not undertaken with
    malice, and
(c) the acts were discretionary, as opposed to ministerial.

Odom, 482 Mich. at 480(relying on Ross v. Consumers Power Co., 420 Mich. 567, 606

(1984)).

Likewise, a government agency is protected by governmental immunity for all tort

liability if it "is engaged in the exercise or discharge of a governmental function."  Mich.

Comp. Laws § 691.1407(1).  Nonetheless, suit against a governmental agency is

permitted in five areas, including the "motor vehicle exception" to governmental

immunity.  See Mich. Comp. Laws § 691.1405.  The exception provides that

"[g]overnmental agencies shall be liable for bodily injury and property damage resulting

from the negligent operation by any officer, agent, or employee of the governmental

agency, of a motor vehicle of which the governmental agency is owner."  Id.

Additionally, a governmental agency may be vicariously liable for the tortious acts of its

officers, employees, or agents, if the tort is committed during the course of employment

and within the scope of authority, while the individual is engaged in an activity which is

13

nongovernmental or proprietary.  Ross, 420 Mich. at 625.  "However, if the activity in which the tortfeasor was engaged at the time the tort was committed constituted the exercise or discharge of a governmental function (i.e., the activity was expressly or impliedly mandated or authorized by constitution, statute, or other law), the agency is immune pursuant to § 7 of the governmental immunity act."  Id. (citing Hirych v. State Fair Comm., 376 Mich. 384, 391-93 (1965); Sherbutte v. Marine City, 374 Mich 48, 50 (1964) (city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers were engaged in police activity, which is a governmental function entitled to immunity)).

The parties do not dispute that Deputy Roy was acting within the scope of his authority and was engaged in the discharge of a governmental function at the time Plaintiff was injured.  Therefore, his liability for the negligent tort claims rests on whether he acted with gross negligence.  "Gross negligence" is defined within the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results."  Mich. Comp. Laws § 691.1407(8)(a).  Based on the facts alleged in the amended complaint, Deputy Roy could be construed to have acted without concern for whether he injured Plaintiff when he struck him with the police cruiser just as another officer on foot was about to apprehend him.  Therefore, Deputy Roy is not entitled to immunity from the negligent tort claims.

Likewise, regarding the intentional tort claims, Deputy Roy's liability depends on whether he acted in bad faith.  Lack of good faith has been defined as "malicious intent, capricious action or corrupt conduct or wilful and corrupt misconduct . . . ."  Odom, 482 Mich. at 474 (internal quotations omitted).  Further, willful and wanton misconduct "is

14

made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." Id. at 475.  Deputy Roy contends that Plaintiff's complaint fails to plead bad faith explicitly.  A reading of the complaint, however, demonstrates that bad faith unquestionably has been pleaded.  For example, with respect to the tortious assault and battery claim, Plaintiff alleges that Deputy Roy's actions in striking him with the police cruiser were "intentional, deliberately indifferent, grossly negligent, willful, wanton, reckless, malicious and/or oppressive, without regard to human dignity and resulting in unnecessary and wanton infliction of pain."  (Compl., ¶ 65.)  These pleadings comport with the definition of bad faith set forth above, and the Court therefore finds that Deputy Roy is not entitled to immunity from the intentional tort claims.

With respect to the County of Washtenaw and the Charter Township of Ypsilanti, the parties agree that they were engaged in the exercise or discharge of a governmental function.  These governmental agencies are not subject to vicarious liability for the potential torts committed by Deputy Roy because he was discharging a governmental function at the time the alleged tort took place.  See Ross, 420 Mich. at 625.  Therefore, County of Washtenaw is entitled to governmental immunity from all tort claims.  However, because Deputy Roy may be held liable for negligence, as discussed below, the Charter Township of Ypsilanti – as the owner of the cruiser – would not be immune from liability for negligent tort claims because the motor vehicle exception would apply.  Though liable for negligent conduct, the Charter Township of Ypsilanti is entitled to government immunity from the intentional tort claims.

**A.  Negligent Tort Claims**

15

### 1.  Automobile Negligence (Count III)

Plaintiff alleges that Deputy Roy negligently operated a motor vehicle, with the permission of the Charter Township of Ypsilanti, in violation of Mich. Comp. Laws § 257.1 *et seq.*  The elements of a negligence claim in Michigan are: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the defendant's breach caused the plaintiff's harm; and (4) damages to the plaintiff. Bradford v. Wurm, 610 F. Supp. 2d 835, 842 (E.D. Mich. 2009).

Defendants' sole argument against this negligence claim is that a police officer who is pursuing a fleeing criminal owes no duty to that criminal during the pursuit. Defendants rely on Robinson v. City of Detroit, 462 Mich. 439 (2000), and Jackson v. Oliver, 204 Mich. App. 122 (Mich. Ct. App. 1994), in support of this argument.  Jackson involved a motorist who was killed during a high-speed chase when he fled from pursuing police officers.  204 Mich. App. at 123.  Similarly, Robinson concerned injuries to criminal suspects who were passengers in a fleeing vehicle.  462 Mich. at 444.  The facts of the present case, however, are most similar to those in Bradford v. Wurm, where the plaintiff alleged that he was injured during a police pursuit when he exited a vehicle in order to flee on foot.  610 F. Supp. 2d 835, 837 (E.D. Mich. 2009).  The police maneuvered their cars to impede the plaintiff's escape, resulting in his being pinned between the bumpers of the two cars.  Id.  In Bradford, the court determined that Jackson and Robinson were distinguishable because the plaintiffs in those cases caused their own injuries by fleeing at high rates of speed in response to the police officers' pursuit.  Id. at 843.  In contrast, "[t]he case presented by Mr. Bradford is different because Bradford did not cause his injuries; the defendants' alleged gross

negligence in the operation of a motor vehicle was the cause.  Bradford was on foot when he was impacted by the police vehicle." Id. at 843-44.  The Court agrees that Plaintiff's culpability does not completely eviscerate the duty of care owed by the police officers to Plaintiff.  As recognized in Bradford, to hold otherwise would be to "announce a categorical rule that the police may do whatever they like to a wrongdoer who is fleeing." Id. at 844.  Accordingly, the Court finds that Deputy Roy owed Plaintiff a duty of care during the pursuit.  Because the Court cannot determine as a matter of law that Roy was not negligent under the facts pleaded in the complaint, the negligence claim shall not be dismissed.

## 2. Gross Negligence (Count VI)

The complaint asserts a gross negligence claim against all Defendants based on Deputy Roy's "[c]ausing a vehicle to intentionally or grossly negligently collide with Plaintiff while he was a pedestrian . . . ."  Defendants correctly contend that gross negligence is not an independent cause of action under Michigan law.  Michigan case law has "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." VanVorous v. Burmeister, 262 Mich. App. 467, 483-84 (Mich. Ct. App. 2004).  Where, as here, a claim for gross negligence is fully premised on the same facts or events as a claim for excessive force, courts have determined that the gross negligence claim must fail. See id.  "Although establishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action." Bletz v. Gribble, 641 F.3d 743, 756 (6th Cir. 2011).  Accordingly, Plaintiff's gross negligence claim is hereby dismissed.

### 3. Statutory Owner's Liability (Count V)

Plaintiff alleges liability on the part of the Charter Township of Ypsilanti as the owner of a vehicle that was negligently operated with its express consent or knowledge, in accordance with Mich. Comp. Laws § 257.401.  Defendant Charter Township of Ypsilanti's sole argument with respect to this claim is that it is not liable because Deputy Roy is not liable – since Roy owed no duty of care, Plaintiff's negligence claim must fail. As discussed above, Deputy Roy did owe a duty of care to Plaintiff, and the Court therefore cannot determine as a matter of law that he was not negligent.  Given the motor vehicle exception to governmental immunity, the Charter Township of Ypsilanti is also liable for negligence pursuant to statute.  This claim may not be dismissed.

### 4. Negligent Entrustment (Count IV)

Plaintiff alleges that the Charter Township of Ypsilanti was negligent in "entrust[ing] its motor vehicle to a person who was unfit to operate a motor vehicle on the highways . . . by reason of his inexperience, and/or habitually negligent driving," which was known to the Charter Township of Ypsilanti or, in the exercise of reasonable care, should have been known to it.  Although the complaint is devoid of any facts that would indicate that Deputy Roy was an unfit driver, that he was inexperienced, or that he was a habitually negligent driver, Plaintiff does not have access to any such information at this early stage of the litigation.  For the same reasons articulated above in relation to his § 1983 failure to train claim, Plaintiff should be afforded the opportunity to conduct discovery regarding Deputy Roy's driving records and employment history. Therefore, this claim may not be dismissed at this stage.

### B. Intentional Tort Claims

### 1. Assault & Battery (Count VII)

According to Michigan law, an assault is an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." Espinoza v. Thomas, 189 Mich. App. 110, 119 (Mich. Ct. App. 1991). A battery is defined as the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact. Id. Because unlawfulness is an element of both assault and battery, police officers and other government actors may find it necessary – and are permitted – in the performance of their work duties to act in ways that would otherwise subject them to liability for intentional torts. Van Vorous, 262 Mich. App. 467, 483 (Mich. Ct. App. 2004).

The complaint alleges sufficient facts to support claims of assault and battery as to Deputy Roy. It is possible that Plaintiff was placed in fear of imminent harm as he saw or heard the police cruiser speeding towards him. Likewise, Deputy Roy made harmful contact with Plaintiff, and, according to the facts alleged by Plaintiff, this contact appears to have been intentional in order to apprehend him. Therefore, the assault and battery claims survive with respect to Deputy Roy.

### 2. Intentional Infliction of Emotional Distress (Count VIII)

A claim for intentional infliction of emotional distress (IIED) requires that the plaintiff establish (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Id. at 481. The standard for establishing

19

IIED is very high, and liability will not be imposed unless a plaintiff can demonstrate that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 482-83.  Conduct rising to the level of IIED "shocks the conscience," see Williams v. Payne, 73 F. Supp. 2d 785, 793 (E.D. Mich. 1999), and does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," see Roberts, 135 Mich. at 603.  Furthermore, it is initially a question of law for a court's consideration in determining whether defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery.  Roberts v. Auto Owners Ins. Co., 135 Mich. App. 595, 599 (Mich. Ct. App. 1983), rev'd on other grounds, 422 Mich. 594 (Mich. 1985).

The facts at issue in the present case might rise to the level of outrageousness that is utterly intolerable in a civilized community with respect to Deputy Roy's actions. If, for example, Plaintiff can show through discovery that Deputy Roy maliciously hit him with the vehicle with the intention of causing bodily harm, such conduct may rise to the level of outrageousness that could sustain a claim of IIED.  Therefore, this claim also survives Defendants' Motion to Dismiss.

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.  Specifically, the Court **DISMISSES** Deputies Brian Kittle, Jeff Gontarski, Thomas Guynes, Sam Wallace, Paul Corrie, Sgt. Dave

Archer, and Cpl. Jeff Carek from the entirety of the lawsuit.  The Court also **DISMISSES** the Eighth and Fourteenth Amendment claims from Count I, the claim against Sheriff Clayton in his official capacity from Count II, the gross negligence claim (Count VI), all state law claims against the County of Washtenaw, and the assault and battery and IIED claims against the Charter Township of Ypsilanti.  The surviving claims are therefore:

- The § 1983 Fourth Amendment claim against Deputy Roy (Count I);

- The § 1983 municipal/supervisory liability claim against Defendants County of Washtenaw and Sheriff Clayton in his individual capacity (Count II);

- The negligence claims against Defendants Deputy Roy and the Charter Township of Ypsilanti (Counts III and V);

- The negligent entrustment claim against the Charter Township of Ypsilanti (Count IV);

- The assault and battery claim against Deputy Roy (Count VII); and

- The IIED claim against Deputy Roy (Count VIII).


**IT IS SO ORDERED.**

Date:   August 18, 2015                                  s/Marianne O. Battani
                                                         MARIANNE O. BATTANI
                                                         United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 18, 2015.

s/ Kay Doaks
Case Manager